IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARTYN BAYLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ETIHAD AIRWAYS P.J.S.C.; | ) | Case No. 1:15-cv-08736 |
| SARAVDEEP MANN; STARWOOD | ) | |
| HOTELS & RESORTS WORLDWIDE, | ) | |
| INC.; LaSALLE HOTEL PROPERTIES; | ) | |
| and DUBLIN BAR AND GRILL, INC., | ) | |
| | ) | |
| Defendants. | ) | *Plaintiff Demands a Jury Trial* |

**COMPLAINT AT LAW**

**NOW COMES** the plaintiff, MARTYN BAYLAY, by his attorneys, Muslin & Sandberg, through Craig M. Sandberg, and complaining of the defendants states as follows:

**I. Nature of Action**

1. This is an action by the plaintiff, MARTYN BAYLAY, against the defendants seeking compensatory damages.

**II. Parties**

**A. Plaintiff**

2. MARTYN BAYLAY ("BAYLAY") is a citizen of the United Kingdom. At all relevant times herein, BAYLAY was a pilot (Senior First Officer) employed in the Flight Operations Department at ETIHAD (as herein defined). At the time of the incident, he was 54 years old.

**B.     Defendants**

3.     ETIHAD AIRWAYS P.J.S.C. ("ETIHAD") is a Public Joint Stock Company that was established by Emiri Decree and incorporated in the Emirate of Abu Dhabi, United Arab Emirates ("U.A.E."). ETIHAD operates a fleet of aircraft to serve an international network of passenger and cargo destinations in the Middle East, Africa, Europe, Asia, Australia, and North America. According to ETIHAD'S counsel's Notice of Removal[1] (DE 1, PageID #2, ¶ 3) in a filing in the United States District Court of New Jersey (Case No. 2:12-cv-02051-JLL-JAD), ETIHAD considers itself a "foreign state" as defined by 28 U.S.C. § 1603(a) subject to the provisions of the Foreign Sovereign Immunities Act ("FSIA"). Based upon the aforementioned representation, the United States Department of State, Overseas Citizens Services, Office of Legal Affairs is responsible for providing service of process on such a foreign states under the FSIA via the diplomatic channel in accordance with 28 U.S.C 1608(a)(4) and implementing regulations, 22 C.F.R. 93.

4.     Upon information and belief, SARAVDEEP MANN ("MANN") maintains residences in several locations including in India (New Delhi), U.A.E. (Abu Dhabi), and the United States (Dallas/Fort Worth/Denton, Texas). At the time of the incident, he was 44 years old. According to the Federal Aviation Administration ("FAA") database, MANN'S home address is S-374 Greater Kailash Part-2, New Delhi 110048. According the Chicago Police Department ("CPD") report of MANN'S arrest, MANN'S home address was 40B 3A Khalifa, Abu Dhabi, U.A.E. This address is in Khalifa City, which is where ETIHAD'S headquarters is, also, located. MANN is married to Shibani Mann née Singh. MANN is/was an avid participate in skeet/trap shooting.

---

[1] Citations made to the docket will be denoted as "DE ____."

5. STARWOOD HOTELS & RESORTS WORLDWIDE, INC. ("STARWOOD") is a company formed under the laws of the State of Maryland. STARWOOD manages The Westin Michigan Avenue Chicago.

6. LaSALLE HOTEL PROPERTIES ("LHO") is a company formed under the laws of the State of Maryland. LHO is the owner of and does business in Chicago as The Westin Michigan Avenue Chicago.

7. DUBLIN BAR AND GRILL, INC. ("DBG") is a company formed under the laws of the State of Illinois. DBG is the owner of and does business in Chicago as Dublin's Bar and Grill.

### III. Jurisdiction

8. This district court has jurisdiction over the lawsuit against ETIHAD because the action arises under 28 U.S.C. § 1330(a) because this matter is against a foreign state. Alternatively, this district court has jurisdiction over the lawsuit against ETIHAD under 28 U.S.C. § 1332 because the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

9. This district court has jurisdiction over the lawsuit against MANN under 28 U.S.C. § 1332 because the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. Alternatively, this district court has jurisdiction over the lawsuit against MANN under 28 U.S.C. § 1367 because the claim against MANN is so related to a claim in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. This district court has jurisdiction over the lawsuit against STARWOOD under 28 U.S.C. § 1332 because the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

11. This district court has jurisdiction over the lawsuit against LHO under 28 U.S.C. § 1332 because the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

12. This district court has jurisdiction over the lawsuit against DBG under 28 U.S.C. § 1332 because the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

### IV. Venue

13. Venue is appropriate in the Northern District of Illinois pursuant to 28 USC § 1391(b) because at least one defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district. Additionally, venue is appropriate in the Northern District of Illinois, as to ETIHAD, pursuant to 28 USC § 1391(c) because its planes (vessels) are situated in this district when operating out of Chicago O'Hare International Airport.

### V. Vicarious Liability

14. Whenever in this petition it is alleged that a defendant did any act or thing, it is meant that the defendant's agents, officers, servants, borrowed servants, employees or representatives did such act or thing and that the time such act or thing was done, it was done with the full authorization or ratification of defendant or was done in the normal and routine course and scope of employment of defendant's officers, agents, servants, borrowed servants, employees or representatives. The principal is vicariously liable for the acts of the agent because

of an employer employee status, agency by estoppel, ostensible agency or borrowed servant doctrine.

## VI. Facts

15. On October 13 or 14, 2013, BAYLAY and the other three members of the four pilot crew were on a layover in the United States following a flight from the Emirate of Abu Dhabi.[2]

16. Chicago[3] is one of ETIHAD'S international outstations.

17. Because the flight is approximately 15 hours, the flight crew consists of two duty teams (Team A and Team B). Team A consisted of Craig Poe and MANN. Team B consisted of BAYLAY and Jimmy Tampubolon.

18. Upon arriving in Chicago on the afternoon of October 13, BAYLAY, MANN and the other two members of the four pilot crew were driven in an ETIHAD-arranged transport to a hotel where the airline arranged for the crew to stay until the return flight to Abu Dhabi on October 14.

19. Like when foreign-national crewmembers are in the U.A.E. at the ETIAHD-provided apartment accommodations ("Company Provided Accommodation"), at ETIHAD-directed layover locations, ETIHAD provides hotel accommodations.

20. In the evening of Sunday, October 13, the four pilots had cocktails/drinks together at The Grill at The Westin Michigan Avenue Chicago, which was their layover hotel.

---

[2] Abu Dhabi International Airport's International Air Transport Association ("IATA") code is "AUH".
[3] Chicago O'Hare International Airport's IATA code is "ORD".

21. MANN consumed a significant amount of alcohol in the 30-40 minutes the group was at the hotel. Additionally, MANN appeared to have consumed alcohol prior to the group getting together.

22. The four pilots left the hotel and had an evening meal at DUBLIN BAR AND GRILL, INC. d/b/a Dublin's Bar & Grill.

23. While at Dublin's, MANN consumed a lot more alcohol.

24. During the course of their meal, MANN became verbally belligerent and expressed anti-British and anti-American opinions, as well as, at one point, MANN put his hands around BAYLAY'S throat and stared at him menacingly.

25. MANN left Dublin's before the other pilots (without paying his bill), so the other pilots settled his account before they left.

26. Before leaving Dublin's between approximately 8:30-9:00 p.m., BAYLAY offered to take the MANN'S jacket that he left behind and return it to MANN the following day.

27. At approximately midnight, BAYLAY heard a knock on the door of his hotel room door and, checking the spy hole, BAYLAY saw MANN, whom BAYLAY thought had come to apologize for his earlier behavior and to collect the jacket he left behind at Dublin's.

28. BAYLAY opened the door and, without any warning, was struck on the head with a bronze-bladed ornament.

29. The aforementioned bronze-bladed ornament was part of the decorating items on the floor of the hotel.

30. BAYLAY fell to the floor where MANN struck BAYLAY again on his leg, MANN then tried to strike BAYLAY a third time again on the head but BAYLAY managed to

grab the weapon and MANN fell on BAYLAY and said "I'm going to kill you. You f*cking British bastard."

31. BAYLAY managed to escape from MANN by getting into the elevator and taking it to the lobby.

32. BAYLAY sustained a closed-head injury and laceration to his scalp, was transferred to Northwestern Memorial Hospital.

33. Following the assault, it came to BAYLAY'S attention that MANN had already gone on a drunken rampage earlier that evening on the 19th floor of The Westin and had been confronted by a security official at The Westin…twice.

34. Regarding the first incident, the security official at The Westin told BAYLAY that when MANN was confronted earlier MANN was in the company of woman. That woman was told to leave The Westin.

35. Regarding the second incident, the security official at The Westin told BAYLAY that this incident resulted in a request for police assistance from the Chicago Police Department.

36. MANN was arrested by Chicago Police and taken to District 018 lock-up located at 1160 North Larrabee Street in Chicago.

37. A complaint was issued against MANN for battery, in violation of 720 ILCS 5/12-3(a)(1), in the matter of *People of the State of Illinois v. Saravdeep Surjeet Singh Mann* (Case No. 2013-1-24272001).

38. After ETIHAD became aware of the actions of MANN against his co-pilot, upon information and belief, the following individuals crafted a plan to get both MANN and BAYLAY out of the United States as soon as possible: Geoff Linaker (Senior Vice President of Operations, Etihad Airways P.J.S.C.), Richard Hill (Chief Operations Officer, Etihad Airways

P.J.S.C.), Chris Ranganathan (Vice-President Training and Standards, Etihad Airways P.J.S.C.), and James Hogan (President and Chief Executive Officer, Etihad Airways P.J.S.C.).

39. At approximately 10:22 a.m. on October 14th, MANN posted bond and, in doing so, agreed to, *inter alia*, (1) appear to answer the charge in court until discharge or final order of court and (2) obey all court orders and process; not leave this State without permission of court and report changes of address to the Clerk within 24 hours.

40. Upon information and belief, thereafter, ETIHAD collected MANN from the police station and, eventually, ETIHAD got MANN out of the United States.

41. In order to get MANN out of the United States as quickly as possible, ETIHAD had to reconfigure its flight schedule and pilot configuration.

42. The first scheduled court appearance for MANN'S criminal matter was at Branch 29 (2452 W. Belmont Avenue in Chicago) on November 12, 2013 at 9:00 a.m.

43. At the first court date, November 12, 2013, MANN failed to appear for Court and, thereafter, forfeited his bond.

44. Following the incident, a fact-finding and information gathering was undertaken by Linaker, which was to be followed by a formal investigation and subsequent action stage undertaken by Oliver Iffert (Vice President of Operations, Etihad Airways P.J.S.C.)

45. Upon information and belief, MANN'S father-in-law, Harry Singh, was/is a senior ETIHAD instructor.

46. Upon information and belief, one of MANN'S friends is/was the vice-president of training and standards for ETIHAD.

47. Upon information and belief, prior to this incident, ETIHAD was aware that MANN had a history of violence.

48. Upon information and belief, prior to this incident, ETIHAD was aware that MANN had a history of alcohol problems.

49. Upon information and belief, prior to this incident, ETIHAD was aware that MANN, when under the influence of alcohol, became violent.

50. BAYLAY was off work for eight-two (82) days.

51. Upon information and belief, following this incident, MANN was asked to resign (he was not dismissed) as a direct employee of EITHAD and, thereafter, based on MANN's Yatedo profile, began employment with ETIHAD's partner, Jet Airways (India) Ltd.

52. ETIHAD is a 24 per cent minority equity stake owner of Jet Airways.

53. Upon information and belief, following this incident, MANN took a pilot position at Jet Airways (India) Ltd.

54. Upon information and belief, following this incident, MANN is an avid participant in weapon contest involving guns.

55. At a time both pre-dating and post-dating the tragedy of Germanwings' mishandling of its pilot, Andreas Lubitz, ETIHAD and, now, Jet Airways appear to be ignoring warning signs about MANN'S fitness to fly passenger jetliners.

56. On December 20, 2013, the Circuit Court of Cook County entered a Memorandum of Judgment ordering forfeiture of bail bond.

57. Thereafter, when MANN did not surrender himself within 30 days of the forfeiture (December 20, 2013), MANN committed the crime of violation of bail bond (720 ILCS 5/32-10).

58. Because 720 ILCS 5/12-3 is a Class A misdemeanor, the violation of bail bond in *People of the State of Illinois v. Saravdeep Surjeet Singh Mann* (Case No. 2013-1-24272001) is a Class B misdemeanor (720 ILCS 5/32-10(a)).

59. Further, any efforts by ETIHAD (acting through its agents and employees) to obstruct the prosecution of MANN (by getting him out of the United States or preventing BAYLAY from participating in the prosecution of MANN) may constitute a violation of 720 ILCS 5/31-4 (Obstructing Justice), which is a Class 4 felony, and/or acts as a ratification of MANN'S conduct.

### Count I
### (Negligent Retention - Etihad Airways P.J.S.C.)

60. Plaintiff repeats, realleges, and incorporates paragraphs one (1) through fifty-nine (59) with the same force and effect as though fully set forth herein.

61. During the course of MANN'S employment with ETIHAD, ETIHAD became aware or should have become aware of problems with its employee, MANN, that indicated his unfitness, and ETIHAD failed to take further action such as investigation, discharge or reassignment.

62. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of ETIHAD, the plaintiff suffered injuries.

63. Plaintiff's damages are in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE** the plaintiff, MARTYN BAYLAY, pray this court for damages according to proof and for such other and further relief as this Court deems just.

## Count II
### (NEGLIGENCE - ETIHAD AIRWAYS P.J.S.C.)

64. Plaintiff repeats, realleges, and incorporates paragraphs one (1) through fifty-nine (59) with the same force and effect as though fully set forth herein.

65. On October 14, 2013, and at all times material, it was the duty of ETIHAD, through its employee (MANN), to exercise ordinary care and caution for the safety of others, particularly towards BAYLAY.

66. On October 14, 2013, and at all times material, ETIHAD, through its employee (MANN), failed to exercise that degree of care.

67. On October 14, 2013, and at all times material, ETIHAD, through its employee (MANN), had a duty to refrain from the extreme and outrageous conduct.

68. On October 14, 2013, and at all times material, ETIHAD, through its employee (MANN), failed to refrain from the extreme and outrageous conduct.

69. On October 14, 2013, and at all times material, ETIHAD, through its employee (MANN), was guilty of one or more of the following respects:

   (a) Carelessly and negligently hit and/or struck BAYLAY with an object about the leg and head; and/or
   (b) Carelessly and intentionally hit and/or struck BAYLAY with an object about the leg and head.

70. As a direct and proximate result of one or more of the foregoing negligent and/or intentional acts and/or omissions of ETIHAD, through its employee (MANN), BAYLAY suffered great pain and anguish, both in mind and body, and continues to suffer.

71. Following the incident, upon information and belief, ETIHAD ratified the actions of its employee (MANN) when, with knowledge that MANN had been charged with a criminal act, assisted or otherwise facilitated his exit from the United States.

72. Plaintiff's damages are in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE** the plaintiff, MARTYN BAYLAY, pray this court for damages according to proof and for such other and further relief as this Court deems just.

### Count III
(PERSONAL INJURY – SARAVDEEP MANN)

73. Plaintiff repeats, realleges, and incorporates paragraphs one (1) through fifty-nine (59) with the same force and effect as though fully set forth herein.

74. On October 14, 2013, and at all times material, it was the duty of MANN to exercise ordinary care and caution for the safety of others, particularly towards BAYLAY.

75. On October 14, 2013, and at all times material, MANN failed to exercise that degree of care.

76. On October 14, 2013, and at all times material, MANN had a duty to refrain from the extreme and outrageous conduct.

77. On October 14, 2013, and at all times material, MANN failed to refrain from the extreme and outrageous conduct.

78. On October 14, 2013, and at all times material, MANN was guilty of one or more of the following respects:

   (a) Carelessly and negligently hit and/or struck BAYLAY with an object about the leg and head; and/or
   (b) Carelessly and intentionally hit and/or struck BAYLAY with an object about the leg and head.

79. As a direct and proximate result of one or more of the foregoing negligent and/or intentional acts and/or omissions of MANN, BAYLAY suffered great pain and anguish, both in mind and body, and continues to suffer.

80. Plaintiff's damages are in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE** the plaintiff, MARTYN BAYLAY, prays this court for damages according to proof and for such other and further relief as this Court deems just.

**<u>Count IV</u>**
**(DRAM SHOP ACT – THE WESTIN MICHIGAN AVENUE CHICAGO)**

81. Plaintiff repeats, realleges, and incorporates paragraphs one (1) through fifty-nine (59) with the same force and effect as though fully set forth herein.

82. At all times relevant herein, there was in full force and effect in the State of Illinois the Liquor Control Act of 1934 ("the Act") (235 ILCS 5/1-1, *et seq*.) wherein its stated purpose is "the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors."

83. At all times relevant herein, there was in full force and effect in the State of Illinois Section 5/6-21 of the Act, which is commonly known as the "Dram Shop Act."

84. That this Count is based upon the Dram Shop Act.

85. On October 13, 2013, STARWOOD HOTELS & RESORTS WORLDWIDE, INC. and LaSALLE HOTEL PROPERTIES were corporations, authorized to do business in the State of Illinois, and owned, controlled, managed and/or operated, and was the licensee of a certain place of accommodation, commonly known as The Grill, located at 909 North Michigan Avenue, Chicago, Illinois 60611, and in the business of serving alcoholic liquors to the general public.

86. Upon information and belief, on October 13, 2013, the defendant sold or gave certain alcoholic beverages to MANN, who became intoxicated as a result.

87. At approximately midnight, MANN injured BAYLAY at The Westin Michigan Avenue Chicago.

88. Upon information and belief, MANN was intoxicated at the time of the aforementioned occurrence.

89. Upon information and belief, the defendant, its agents or employees, sold or gave intoxicating liquor consumed by MANN.

90. Upon information and belief, the liquor consumed caused the intoxication of the MANN.

91. Upon information and belief, MANN's intoxication was at least one cause of the occurrence in question.

92. As a direct and proximate result of his intoxication, MANN committed one or more of the following acts and/or omissions:

    (a) Carelessly hit and/or struck BAYLAY with an object.

93. As a direct and proximate result of MANN'S intoxication, BAYLAY suffered severe and permanent injuries.

94. As a direct and proximate result of one or more of the foregoing acts and/or omissions of the defendant, and each of them, BAYLAY suffered great pain and anguish, both in mind and body, and continues to suffer.

95. Plaintiff's damages are in excess of Fifty Thousand Dollars ($50,000.00), the minimum jurisdictional amount of this Court.

**WHEREFORE** the plaintiff, MARTYN BAYLAY, prays this court for damages according to proof and for such other and further relief as this Court deems just.

### Count V
### (NEGLIGENCE – THE WESTIN MICHIGAN AVENUE CHICAGO)

96. Plaintiff repeats, realleges, and incorporates paragraphs one (1) through fifty-nine (59) with the same force and effect as though fully set forth herein.

97. That on and before October 14, 2013, STARWOOD HOTELS & RESORTS WORLDWIDE, INC. and LaSALLE HOTEL PROPERTIES had the duty to exercise ordinary care.

98. That on and October 14, 2013, and at all times material, STARWOOD HOTELS & RESORTS WORLDWIDE, INC. and LaSALLE HOTEL PROPERTIES failed to exercise that degree of care.

99. That notwithstanding that duty, STARWOOD HOTELS & RESORTS WORLDWIDE, INC. and LaSALLE HOTEL PROPERTIES breached said duty to plaintiff in that they:

   (a) Carelessly and negligently failed to provide adequate security and protection against harm to MARTYN BAYLAY at The Westin Michigan Avenue Chicago;
   (b) Carelessly and negligently failed to implement adequate security at The Westin Michigan Avenue Chicago;
   (c) Carelessly and negligently failed to provide properly trained security at The Westin Michigan Avenue Chicago; and/or
   (d) Carelessly and negligently provided security measures that it voluntarily undertook to perform.

100. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of the defendant, MARTYN BAYLAY suffered significant and permanent injuries.

101. Plaintiff's damages are in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE** the plaintiff, MARTYN BAYLAY, prays this court for damages according to proof and for such other and further relief as this Court deems just.

### Count VI
(D<small>RAM</small> S<small>HOP</small> A<small>CT</small> – D<small>UBLIN</small> B<small>AR AND</small> G<small>RILL,</small> I<small>NC.</small>)

102. Plaintiff repeats, realleges, and incorporates paragraphs one (1) through fifty-nine (59) with the same force and effect as though fully set forth herein.

103. At all times relevant herein, there was in full force and effect in the State of Illinois the Liquor Control Act of 1934 ("the Act") (235 ILCS 5/1-1, *et seq*.) wherein its stated purpose is "the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors."

104. At all times relevant herein, there was in full force and effect in the State of Illinois Section 5/6-21 of the Act, which is commonly known as the "Dram Shop Act."

105. That this Count is based upon the Dram Shop Act.

106. On October 13, 2013, DUBLIN BAR AND GRILL, INC. was a corporation, authorized to do business in the State of Illinois, and owned, controlled, managed and/or operated, and was the licensee of a certain place of accommodation, commonly known as Dublin's Bar & Grill, located at 1050 North State Street, Chicago, Illinois 60610, and in the business of serving alcoholic liquors to the general public.

107. Upon information and belief, on October 13, 2013, the defendant sold or gave certain alcoholic beverages to MANN, who became intoxicated as a result.

108. On October 14, 2013, at approximately 12:20 a.m., MANN injured BAYLAY at The Westin Michigan Avenue Chicago.

109. Upon information and belief, MANN was intoxicated at the time of the aforementioned occurrence.

110. Upon information and belief, the defendant, its agents or employees, sold or gave intoxicating liquor consumed by MANN.

111. Upon information and belief, the liquor consumed caused the intoxication of the MANN.

112. Upon information and belief, MANN's intoxication was at least one cause of the occurrence in question.

113. As a direct and proximate result of his intoxication, MANN committed one or more of the following acts and/or omissions:

    (a) Carelessly hit and/or struck BAYLAY with an object.

114. As a direct and proximate result of MANN'S intoxication, BAYLAY suffered severe and permanent injuries.

115. As a direct and proximate result of one or more of the foregoing acts and/or omissions of the defendant, and each of them, BAYLAY suffered great pain and anguish, both in mind and body, and continues to suffer.

116. Plaintiff's damages are in excess of Fifty Thousand Dollars ($50,000.00), the minimum jurisdictional amount of this Court.

**WHEREFORE** the plaintiff, MARTYN BAYLAY, prays this court for damages according to proof and for such other and further relief as this Court deems just.

**JURY DEMAND**

Plaintiff, MARTIN BAYLAY, asserts his assert his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

        Respectfully submitted,

        MUSLIN & SANDBERG

        By:    /s/Craig M. Sandberg
                 CRAIG M. SANDBERG
                 19 S. LaSalle Street, Suite 700
                 Chicago, Illinois 60603
                 (312) 263-7249

Dated: October 2, 2015