UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTYN BAYLAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 15-cv-08736 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| | ) |
| ETIHAD AIRWAYS P.J.S.C., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Etihad Airways P.J.S.C. ("defendant") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I, II, and III of plaintiff Martyn Baylay's Second Amended Complaint on the basis that these three counts are barred by the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA") [33]. In response, the plaintiff alleges that the IWCA has no preclusive effect upon his claims against the defendant because the Foreign Sovereign Immunities Act ("FSIA") provides exclusive jurisdiction over "foreign states" such as defendant and thereby divests Illinois state courts, and the Illinois Workers' Compensation Commission ("IWCC"), of jurisdiction over this matter. For the reasons set forth below, the court grants the defendant's motion to dismiss.

**I.   BACKGROUND**

The following facts are drawn from the plaintiff's Second Amended Complaint [32] and are taken as true for purposes of this motion to dismiss. The plaintiff is a citizen of the United Kingdom who was employed as a pilot by defendant Etihad Airways P.J.S.C. The defendant is a Public Joint Stock Company that operates a fleet of aircraft serving international routes, including North American, Europe, and the Middle East. On the night giving rise to the events

of this lawsuit, October 13, 2013, the plaintiff and three other pilots, including defendant Saravdeep Mann ("Mann"), were on a layover in Chicago, Illinois following a flight from the Emirate of Abu Dhabi. That evening, the plaintiff, Mann, and the two other pilots went out for dinner and drinks. Mann consumed an excessive amount of alcohol, became verbally abusive, and even threatened the plaintiff physically by placing his hands around the plaintiff's throat. Mann ultimately left the restaurant before the other pilots at about 8:30 to 9:00 p.m., although he left his coat behind and failed to pay for his portion of the bill. The plaintiff left the restaurant sometime later and brought Mann's coat with him back to their hotel.

At approximately midnight of that same night, the plaintiff heard a knock on his hotel door, looked through the peep hole, and saw Mann standing outside the door in the hallway. Thinking that Mann wanted to apologize for his earlier behavior and collect his jacket, the plaintiff opened the door, only to be struck on the head and leg by Mann, who was wielding a hotel decoration described as a "bronze-bladed ornament." During the attack, Mann (who is from India) verbally threatened the plaintiff by saying "I'm going to kill you. You f*cking British bastard." The plaintiff sustained a head wound and was transported to Northwestern Memorial Hospital, while Mann was arrested and transported to the Chicago Police Department, where he was charged with battery.

Mann posted bond on the morning of October 14, 2013, and left the police station. Sometime thereafter, Mann left the United States. On the plaintiff's information and belief, the defendant picked up Mann from the police station and reconfigured both pilot and flight schedules to successfully remove Mann from the United States. Mann subsequently failed to appear at his first court date in November 2013 and thus forfeited his bond. On the plaintiff's

information and belief, the defendant was aware that Mann had a history of violence and alcohol problems.

## II. LEGAL ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a complaint if it "fail[s] to state a claim for which relief can be granted." The court must accept all facts pleaded in the complaint as true, and must draw all reasonable inferences in the plaintiff's favor. *INEOS Polymers, Inc. v. BASF Catalysts,* 553 F.3d 491, 497 (7th Cir. 2009). In general, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" *E.E.O.C v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting Rule 8(a)), with sufficient facts to put the defendant on notice "of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (internal quotation mark omitted) (alterations in original). To survive a motion to dismiss under Rule 12(b)(6), the complaint need not present particularized facts, but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic,* 550 U.S. at 555).

**A. The Illinois Workers' Compensation Act**

The defendant argues in its motion to dismiss that the IWCA precludes the plaintiff from proceeding against it in this court. Specifically, the defendant maintains that Count I (negligent retention), Count II (negligence), and Count III (willful and wanton conduct) of the Second Amended Complaint are barred by the ICWA's exclusivity provisions. In his responsive pleading, the plaintiff does not directly address the defendant's IWCA exclusivity arguments but

instead argues that the IWCA is inapplicable to this case due to the jurisdictional requirements of the FSIA, 28 U.S.C. § 1602 et seq.[1]

The IWCA provides an administrative remedy for employee injuries "arising out of and in the course of the[ir] employment." 820 ILCS 305/11. The IWCA abrogates employer liability for all common law negligence claims, *Walker v. Doctors Hosp.,* 110 F. Supp. 2d 704, 714 (N.D. Ill. 2000), and it does so through its two exclusivity provisions. The first, Section 5(a), provides, in pertinent part:

> No common law or statutory right to recover damages from the employer ... for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act....

820 ILCS 305/5(a). The second, Section 11, states, among other things, that the compensation provided by the IWCA "shall be the measure of the responsibility" of an employer. *Id.* at 303/11. Illinois courts have held that the goal of the exclusivity clauses is to prevent employees from receiving double compensation for injuries suffered in the workplace; accordingly, an employee may not recover under both the IWCA and a common law claim for injuries covered by the IWCA. *James v. Caterpillar Inc.,* 611 N.E.2d 95, 104 (Ill. App. Ct. 1993); *Witham v. Mowery,* 514 N.E.2d 531, 532 (Ill. App. Ct. 1987).

If, as here, an employer is sued in common law, the employer may raise the IWCA's exclusivity bar as an affirmative defense. *See Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 956 (N.D. Ill. 2002); *Doyle v. Rhodes,* 461 N.E.2d 382, 386 (1984). Once the employer raises the defense and establishes two elements—the existence of an employment relationship and the nexus between the employment and the injury—the burden shifts to the employee-plaintiff to prove one of the four exceptions to exclusivity: (1) that the injury was not

---

[1] As a consequence of the plaintiff's limited response to the defendant's motion to dismiss, the court requested an additional round of briefs. *See* Dkt. Nos. 108, 109, 111.

accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury is not compensable under the Act. *Whitehead v. AM Int'l, Inc.,* 860 F. Supp. 1280, 1289 (N. D. Ill. 1994); *Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1226 (Ill. 1990); *see also Acuff v. IBP, Inc.,*77 F. Supp. 2d 914, 922 (C.D. Ill. 1999) (IWCA bar "must be pleaded and proven by the employer"). It is important to note that because complaints in federal court need not plead or even anticipate affirmative defenses, dismissal on a Rule 12(b)(6) motion based on an affirmative defense "is appropriate only where the defense is conclusively established by the complaint, concessions made by the plaintiff, or any other material appropriate for judicial notice."[2] *Arnold,* 215 F. Supp. 2d at 956-57.

Here, the parties do not dispute the existence of an employment relationship. Nor is there any real doubt regarding a nexus between the employment and the injury. A nexus exists if "the injury occurred within the period of employment, at a place where the employee might reasonably have been, and while he was reasonably fulfilling duties of his employment or doing something incidental thereto." *Pechan v. DynaPro, Inc.*, 622 N.E.2d 108, 121 (Ill. App. Ct. 1993). By the plaintiff's own admission, his "injuries were sustained during his layover in Chicago as part of his job duties with Etihad, which relate to Etihad's commercial activities as a provider of passenger travel." Dkt. 53, ¶ 14. Looking more closely at the specifics of the plaintiff's situation at the time of his injury, the court notes that the plaintiff was on a layover in Chicago when his injury occurred, that he stayed at a hotel arranged by the defendant, that he ate and drank at the hotel bar and a local restaurant, and that he then returned to his hotel, where the

---

[2] Defendant asked the court to take judicial notice of the IWCA's publicly available records, including those that show that defendant has elected to be subject to the IWCA and is a registered employer. *See* http://www.iwcc.il.gov/coverage.htm (last visited November 29, 2016).

5

injury occurred. *See* SAC, Dkt. 32, ¶¶ 19-29. These factual allegations, within the layover context, are enough to establish an employment nexus. *See, e.g., Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 135 (2d Cir. 2001) (New York's workers' compensation statute precluded state common law claims against airline stemming from a rape that occurred in a hotel room between two flight attendants during a layover and also occurred in a "work environment" for purposes of Title VII as "the circumstances that surround the lodging of an airline's flight crew during a brief layover in a foreign country in a block of hotel rooms booked and paid for by the employer are very different from those that arise when stationary employees go home at the close of their normal workday"); *Gray v. Eastern Airlines, Inc.*, 475 So. 2d 1288 (Fla. App. Ct. 1985) (flight attendant injured playing basketball while on two-day layover was eligible for workers' compensation benefits).

The court therefore turns to the four exclusivity exceptions:

### 1. Whether the injury was accidental

The first exception to the ICWA's exclusivity provisions addresses whether the injury was "accidental." The Illinois Supreme Court has defined the term "accidental" to be a comprehensive one that is "almost without boundaries in meaning as related to some untoward event." *Ervin v. Industrial Comm'n*, 4 N.E.2d 22, 24 (Ill. 1936). Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of "accidental" and are preempted by the ICWA. *See Lannom v. Kosco*, 634 N.E.2d 1097, 1100-01 (Ill. 1994); *Jane Doe-3 v. McLean County Unit Dist. No. 5 Bd. of Directors*, 973 N.E. 880, 887 (Ill. 2012) (willful and wanton conduct is simply an "aggravated form of negligence"). The Illinois Supreme Court also has found that even intentional torts committed by co-workers are "accidental" within the meaning of the IWCA because they are unexpected

and unforeseeable from both the injured employee's and the employer's points of view. *Meerbrey,* 564 N.E.2d at 1226. It is only when a plaintiff establishes that the employer or its alter ego intentionally inflicted the alleged injuries that the injury ceases to be accidental. *Id.*

In this case, Counts I, II, and III each allege either negligence or willful and wanton conduct on the defendant's part. Each of these counts is barred by the ICWA. Only truly intentional torts fall outside of the IWCA exclusivity provisions, *Mier v. Staley*, 329 N.E.2d 1, 8 (Ill. App. Ct. 1975). Counts I-III sound in negligence, and the plaintiff has not otherwise offered any colorable allegations indicating that the defendant intended for Mann to harm the plaintiff. The first exception to the exclusivity provision is not applicable.

### 2. Whether the injury arises out of the plaintiff's employment

The second exception to the ICWA's exclusivity is whether the injury "arises out of" the employee's employment. *See Kertis v. Ill. Workers' Comp. Com'n*, 991 N.E.2d 868, 872 (Ill. Ct. App. 2013). The question of whether an injury "arises out of his employment" is answered by considering whether the employee's injury occurred while he was engaging in conduct that was "reasonable and foreseeable." *Id.* at 873; *see Kornblum v. Illinois Workers' Comp. Com'n*, No. 01-11-352IWC, 2012 WL 6963532 at *1 (Ill. App. Ct., Nov. 13, 2012) (unpublished) (finding that the claimant (a pilot), who was injured while on a layover when he left a bar late at night and walked to a poorly lit and unfamiliar dock to see if jet skis could be rented, did not engage in reasonable and foreseeable conduct); *Kertis,* 991 N.E.2d at 874 (claimant who was injured in a parking lot acted reasonably and foreseeably when he parked in a parking lot near the employer's office); *U.S Indus. Prod. Mach. Div. v. Indus. Comm'n*, 240 N.E.2d 637 (Ill. 1968) (traveling repairman who, while on an assignment, went to a motel room, consumed several drinks, and

then went for midnight drive in the mountains did not engage in reasonable and foreseeable activity).

In this case, the basic facts are not in dispute. The plaintiff's Second Amended Complaint alleges that Etihad crewmembers represent Etihad at all times during layovers, and that he and the other pilots were driven in Etihad-arranged transportation to a hotel booked by Etihad. *See* Dkt. # 32, ¶¶ 16, 19-20. The plaintiff also asserts that his injuries were sustained during his layover in Chicago as part of his job duties with Etihad. *See* Dkt. 53, ¶ 14. Although the plaintiff later contends in his supplemental brief that the events of October 13, 2013 "are not alleged to have been within the boundary that defines the jobs of either Mann or Baylay," this is not the inquiry before the court. Rather, the inquiry is whether the plaintiff's conduct and actions can be viewed as reasonable and foreseeable to the defendant. The court finds that this is the case. It was reasonable and foreseeable for the plaintiff to go out for dinner and drinks at a local restaurant with fellow pilots while on a layover, and it was reasonable and foreseeable for him to then return to his hotel room. It was also reasonable and foreseeable for the plaintiff to open the door to his fellow pilot—particularly given that he had brought Mann's jacket with him back from the restaurant. The court finds that the second exception does not apply.

### 3. **Whether the injury was received during the course of employment**

Third exception involves whether the plaintiff's injury was received during the course of his employment. The plaintiff acknowledges that he and Mann were acting within the course of their employment. *See* Dkt. 111, at ¶ 33. This exception does not apply.

### 4. **Whether the injury is compensable under the Act**

The court finds no grounds for applying the fourth exception— that the injury is not compensable under the IWCA. Workplace assaults and batteries are generally compensable

under the IWCA, and, therefore, not actionable at common law.  *See Damato v. Jack Phelan Chevrolet Geo, Inc.*, 927 F. Supp. 283, 291 (N.D. Ill. 1996); *Rodriguez v. Industrial Com'n.,* 447 N.E.2d 186, 189-90 (Ill. 1982) (ICWA preemption applied where employee fractured his co-employee's skull while shouting epithets about the co-employee's national origin).

In sum, none of the four exceptions to the exclusivity provision of the ICWA are applicable in this case.  Counts I, II and III of the plaintiff's complaint are precluded by the ICWA.

**B.**     **The Foreign Sovereign Immunities Act**

The plaintiff's chief argument in response to the defendant's motion to dismiss is that the IWCA is completely inapplicable in this case because the FSIA vests exclusive jurisdiction over this matter with the federal courts.  This argument has no merit.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 443, (1989).  The Act defines "foreign state" to include a state "agency or instrumentality" of a foreign state.  28 U.S.C. § 1603(a).  Section 1605 of the FSIA sets forth the general exceptions to the jurisdictional immunity of a foreign state.  This section provides, in relevant part:

> **A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case … in which the action is based upon a commercial activity carried on in the United States by the foreign state**; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (emphasis added).  The parties do not dispute that the defendant falls within the definition of a "foreign state" under the FSIA.  The defendant further concedes that it has waived immunity under the FSIA by electing to be subject to the provisions of the IWCA.

The FSIA may be the sole basis for obtaining jurisdiction over a foreign state, but that does not mean that claims against foreign states may be heard only in federal court. Indeed, the FSIA expressly states that "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter." 28 U.S.C. § 1602; *see also Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004). The Seventh Circuit held in *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932, 936 (7th Cir. 1996), that "[b]y enacting the FSIA, Congress meant to encourage litigants to bring actions involving foreign states in federal courts. It also intended that such actions could continue to be brought in state courts, however." Similarly, in *Martropico Compania Naviera S.A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara (Pertamina),* 428 F. Supp. 1035, 1037 (S.D.N.Y. 1977), the Southern District of New York noted that upon passage of the FSIA, Congress left open the option to choose state courts to sue foreign states, thereby electing not to confer exclusive jurisdiction on the federal courts.

In sum, the FSIA provides that civil actions may be brought in state courts against a "foreign state" as defined in § 1603(a). There is simply no merit to the plaintiff's suggestion that only a federal court has jurisdiction over this matter.

Finally, the court turns to the plaintiff's last contention, which is that the IWCC "lacks authority to make any determination related to Etihad because the FSIA vests that authority solely in the federal courts." Dkt. 53, ¶ 5. This court already has put to rest the question of whether sole jurisdiction and authority over Etihad resides with the federal judiciary—it does not. State courts have concurrent jurisdiction over matters involving "foreign powers." Nor is there any merit to the plaintiff's argument that the IWCC lacks the authority to determine the rights and obligations of the parties' workplace dispute. The IWCC, pursuant to a legislative

grant of power, is vested with the ultimate authority to determine workers' compensation claims. *Dodaro v. Illinois Workers' Compensation Com'n*, 950 N.E.2d 256 (Ill. App. Ct. 2010); *Durand v. Indus. Com'n*, 862 N.E.2d at 924. All decisions of the IWCC are subject to review by Illinois circuit and appellate courts, and, if necessary, the Illinois Supreme Court. 805 ILCS § 305/19(f)(1)-(2); *see also Jones v. Indus. Com'n*, 721 N.E.2d 563, 570 (Ill. 1999) ("We must liberally construe statutes granting a right to appeal so as to permit a case to be considered on its merits."). The plaintiff's arguments regarding the authority of state courts and the IWCC to hear this matter are unavailing.

### III. CONCLUSION

For the foregoing reasons, Defendant Etihad Airways P.J.S.C.'s motion to dismiss Counts I, II, and III of Plaintiff's Second Amended Complaint [33] is granted.

Date: November 29, 2016

/s/
Joan B. Gottschall
United States District Judge